UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 08-343 (JNE/FLN) |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| 01-Floyd Spencer Williams, | |
| Defendants. | |

Thomas M. Hollenhorst, Assistant United States Attorney, for the Government.
Thomas H. Shiah, for Defendant Floyd Spencer Williams.

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 10, 2008 on Defendant's Motion to Suppress Evidence Obtained from Electronic Surveillance and Wiretapping [#39], Defendant's Motion to Suppress Statements [#41], Defendant's Motion to Suppress Any Identifications of Defendant [#42], Defendant's Motion to Suppress any Evidence Obtained as a Result of Any Illegal Searches [#43], Defendant's Motion to Disclose the Identity of All Informants Who Were Witnesses to or Participants in the Crimes Charged in the Indictment [#45] and Defendant's Motion to Produce Any Informants Whose Identity is Disclosed for the Purpose of Conducting Pretrial Interviews [#46]. At the hearing, the Court received testimony from Officer David Garman, Sargent Randall Olson, Officer Mike Nimlos and Sargent Jeffrey Jindra. The Government submitted one exhibit, the search warrant for a residence on 27th Avenue in Minneapolis. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motions be **DENIED in part** and **DENIED as MOOT in part**.

**I.   FINDINGS OF FACT**

### A.  The Warrant.

The testimony heard by the Court concerned the execution of a search warrant at a townhome on 27th Avenue in Minneapolis.  The search warrant stated that a confidential reliable informant ("CRI") told the affiant, Officer Lucas Peterson, that narcotics were being sold and stored at a 27th Avenue residence.  The CRI told Peterson that an individual who goes by the street name "CD" had arrived from Chicago within the last 72 hours with a large amount of cocaine.  The CRI told Peterson that he had been present at the townhome when "CD" stored the cocaine in an upstairs bedroom and when customers came to the residence and "CD" sold them small amounts of cocaine.  Officer Peterson stated that he conducted surveillance of the residence with the CRI and observed a male smoking a cigarette outside the residence whom the CRI identified as "CD."  During surveillance, Peterson and the CRI also observed a Chevrolet Lumina arrive at the townhome.  A lone female whom the CRI identified as Shemika Williams, exited the vehicle, and went inside with "CD."  The CRI told Peterson that Shemika Williams was the girlfriend of "CD."  Officer Peterson stated that further investigation revealed that Shemika Williams was listed as the individual renting the townhome.  The search warrant allowed law enforcement officers to search the townhome for drugs and related items.

### B.  Testimony of Officer Dave Garman.

Officer Garman testified that he has been a police officer with the City of Minneapolis for twelve years.  He is currently an investigator with the metro gang strike force.

On October 22, 2008, he was assigned to assist Officer Peterson in the execution of the search warrant described above.  Officer Garman's assignment was to conduct surveillance in the front of the house prior to the execution of the warrant.  Officer Garman testified that he

conducted surveillance from his car and was located in two different places during the course of the assignment. To begin, he was parked north of the house on 27th Street less than one block away. He later moved to a second location kitty-corner from the house because he could no longer park in the first location. He testified that he arrived around noon to begin observation and that it was raining. He testified that the informant was not present with him in the car. He testified that between noon and 1:30 p.m., he observed through binoculars Defendant Shemika Williams exit the residence at least twice and approach two different cars that had pulled up in front of the house. He testified that he did not observe drugs changing hands between Shemika Williams and the occupants of the cars but believed he saw currency being passed from one of the cars to Shemika Williams. He testified that in his training and experience he had witnessed and participated in hundreds of hand-to-hand drug sales and that he believed that Shemika Williams was engaging in hand-to-hand transactions. At the hearing, Officer Garman positively identified Defendant Shemika Williams as the person he observed serving cars. He testified that he had not met Shemika Williams before that day but he had been given a description of her by Officer Peterson. At the times he observed Shemika Williams serve the cars, he was the only person conducting surveillance and no officers apprehended the vehicles and no evidence was found substantiating his suspicion that Ms. Williams was engaging in drug transactions.

    Officer Garman also testified that he observed a Chevy Blazer pull up to the house and the two occupants exit the vehicle and enter the house. He also testified that around 1:30 p.m. he observed two individuals pull up in maroon Buick. Officer Garman radioed the car's license plate to the other officers working on the case.

    Officer Garman later assisted in the search of the dwelling. He testified that he was

assigned to search the east second floor bedroom and that he did not find any contraband.

###    C.    Testimony of Sargent Randall Olson.

Sargent Olson has been a police officer with the City of Minneapolis since 1991 and is currently working in the gang strike force unit. On October 22, 2008, he was contacted by Officer Peterson to help execute the warrant at the 27th Avenue residence. He testified that Officer Garman was the "main eye" conducting surveillance and was communicating what he saw over the radio. Officer Garman radioed that he was observing heavy foot and vehicle traffic at the house. When Officer Garman radioed that a maroon Buick had pulled up to the house and that the occupants had entered and exited the house within five minutes, Sargent Olson testified that he, along with Officer Peterson in a separate car, followed the vehicle as it left the house. A few blocks away from the house, Officer Peterson activated the lights on his unmarked vehicle. At that point, it was raining heavily and the Buick was stuck in gridlock traffic. Sargent Olson pulled his unmarked squad alongside the Buick and Officer Peterson activated his lights behind the Buick in his unmarked squad. This configuration prevented the Buick from moving any great distance because there was stopped traffic in front of it. For a few seconds, Defendant Alexander, who was driving the Buick, attempted to maneuver the vehicle away from Sargent Olson and Officer Peterson by moving the car backwards and forwards a few feet. Sargent Olson testified that when he observed this, he exited his squad, drew his gun and stood in front of the Buick. At that point, Alexander gave up and stopped moving the car. Sargent Olson proceeded to approach the passenger side of the Buick while Officer Peterson approached the driver's side. Sargent Olson asked Defendant Simms, who was seated in the passenger seat, to step out of the vehicle and Simms did so. At that point, Sargent Olson patted Simms down for

weapons and felt a bulge in Simms' sock. The bulge was a ball of crack cocaine about three fourths the size of a fist, weighing 63 grams. Officer Peterson also found drugs on Alexander. Sargent Olson testified that he knew the search warrant had been signed about 15 minutes before he made the traffic stop because an officer had announced over the nextel radios that it had been signed.

Sargent Olson testified that after he found the drugs, he brought Simms back to the townhouse on 27th Avenue where other officers were executing the search warrant. He testified that when he returned to the townhome, he observed crack cocaine in the townhouse. He also observed that there were two women present, Defendant Shemika Williams and another woman, in addition to a small child. He testified that he did not know Shemika Williams prior to the execution of the warrant. The officers detained between 6 and 7 people, including Alexander and Simms. After the officers completed executing the warrant, they secured the house and returned the key to management. Sargent Olson testified that the search warrant return from the search of the house incorrectly listed the items seized from Defendant Simms when he and Defendant Alexander were pulled over in the maroon Buick. He testified that the items listed as number seven in the return were not recovered from inside the residence but rather at the traffic stop a few blocks from the residence.

Sargent Olson testified that after the key had been returned to management, an Officer Sidell could not find his keys and so he and Sargent Olson returned to the townhouse, obtained a key from management and looked for the officer's keys for about 15 minutes. During the search, they recovered cocaine under a keyboard in the southwest bedroom of the second floor.

Sargent Olson also testified that a black Blazer that was observed leaving the house was

pulled over by an officer and no drugs were recovered from the vehicle.

### D. Testimony of Sargent Jeffrey Jindra.

Sargent Jindra has been an officer with the Minneapolis Police Department for 13 years. He testified that he was notified of the investigation by Officer Peterson and that he was the supervisor upon entry into the townhouse. He testified that Officer Nimlos obtained a key to the townhouse from the management office and that Officer Nimlos had the warrant in hand when he took possession of the key. He testified that when they entered the townhouse, he observed two women, Shemika Williams and another woman, a small child, and a number of men. He testified that the unidentified woman was not arrested.

### E. Testimony of Officer Mike Nimlos.

Officer Nimlos testified that he was in charge of obtaining the key to the townhouse so law enforcement could smoothly execute the warrant. He testified that before he had the warrant, he went to the management office and explained that he was waiting for a warrant and that he would need the key to the townhouse once it was issued. He testified that the key was placed on the management desk and the office staff told him that he could take the key when he needed it. When the warrant was issued, Officer Nimlos returned to the management office and obtained the key.

## II. CONCLUSIONS OF LAW

### A. Motions Determined to Be Moot at the Hearing.

Based on the representations of the parties at the hearing, the Court determined the following motions to be moot:

1. Defendant's Motion to Suppress Evidence Obtained from Electronic Surveillance and Wiretapping [#39].

      2.      Defendant's Motion to Suppress Statements [#41]; and

      3.      Defendant's Motion to Suppress Any Identifications of Defendant [#42].

**B.      Defendant's Motion to Disclose the Identity of All Informants Who Were Witnesses to or Participants in the Crimes Charged in the Indictment [#45] and Defendant's Motion to Produce Any Informants Whose Identity is Disclosed for the Purpose of Conduction Pretrial Interviews [#46] Must be Denied.**

Defendant moved for disclosure of the informant used in this case. A defendant has the right to know the identity of an informant if it is "material" to his defense. *See Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) In *Roviaro*, the defendant was charged with selling and transporting heroin. *Id*. at 55. The only witness to these alleged acts other than law enforcement officials was an informant. *Id*. at 64. Before trial, the trial court denied defendant's request for disclosure of the informant's identity and defendant was found guilty. *Id*. at 55. On appeal to the United States Supreme Court, the Court found that the defendant was entitled to learn the identity of an informant because the informant was the only material witness to the crime other than law enforcement officers. *Id*. at 64. The informant was the "only witness in a position to amplify or contradict the testimony of government witnesses." *Id*.

The defendant bears the burden of demonstrating the need for disclosure of an informant's identity. *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). Here, the Defendant contends that the informant's identity should be disclosed because the entire investigation was based on information disclosed by the informant and because the informant identified Mr. Williams on the day of his arrest and was involved with law enforcement officers on the day the warrant was executed. First, the Court heard no testimony even suggesting that the informant was present during the execution of the search warrant. More importantly,

however, the Government represented at the hearing that it will not call the informant as a witness and will not offer any evidence at trial to which the informant was a witness. The Government rather represented that it intends to prove facts observed on the scene by police officers, facts to which the informant was not a witness. The Defendant has not met his burden of showing that the informant's identity is material to his defense.

      **C.**      **Defendant's Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches [#44] Must be Denied.**

The Defendant contends that the evidence obtained during the search of the house must be suppressed for two reasons: (1) because two officers re-entered the townhome after the search warrant had been executed and seized evidence; and (2) because the key to the townhouse was obtained before the warrant was issued.

In regard to the first argument, Sargent Randall Olson testified that after they completed executing the search warrant, Officer Sidell could not find his keys and so he and Sargent Olson reentered the house about one half hour later to look for the keys. Sargent Olson testified that he and Officer Sidell searched for the keys in the house for about fifteen minutes and, in the process, found cocaine hidden under a keyboard in the southwest bedroom of the second floor. At the hearing, the government represented that it will not present this evidence in its case-in-chief. In light of the Government's representation, the Court need not decide whether the re-entry compels suppression of the drugs found. This aspect of the motion should be denied as moot.

As to the second argument Officer Nimlos' testimony refutes Defendants' contention that the key was obtained before the warrant was issued. Officer Nimlos testified that he informed staff in the management office prior to having the search warrant that he would need the key to

the townhome. He testified that he did not however take possession of the key until he had the warrant. Defendant cited to no cases and the Court is aware of none standing for the proposition that a search warrant must be issued before law enforcement officers may communicate with a management office about the possibility that they will need a key in the near future.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the following motions be **DENIED AS MOOT**:

1. Defendant's Motion to Suppress Evidence Obtained from Electronic Surveillance and Wiretapping [#39].

2. Defendant's Motion to Suppress Statements [#41]; and

3. Defendant's Motion to Suppress Any Identifications of Defendant [#42].

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches be **DENIED** [#43].

### IV. ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the following motions are **DENIED**:

1. Defendant's Motion to Disclose the Identity of All Informants Who Were Witnesses to or Participants in the Crimes Charged in the Indictment [#45];

2. Defendant's Motion to Produce Any Informants Whose Identity is Disclosed for the Purpose of Conduction Pretrial Interviews [#46].

DATED: January 8, 2009                    s/ *Franklin L. Noel*
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 28, 2009**, written objections

which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 28, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.